# In the United States Court of Federal Claims

No.  13-378C

(Filed: July 23, 2014)

| | |
|---|---|
| ********************************** )<br><br>**BCPEABODY CONSTRUCTION** )<br>**SERVICES, INC.,** )<br>)<br>      **Plaintiff,** )<br>)<br>      **v.** )<br>)<br>**UNITED STATES,** )<br>)<br>      **Defendant,** )<br>)<br>      **and** )<br>)<br>**EDENS CONSTRUCTION CO., INC.,** )<br>)<br>      **Defendant-Intervenor.** )<br>)<br>********************************** | Application by a prevailing plaintiff for an award of attorneys' fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; no substantial justification for the government's position; hourly rates; expenses; bond premiums as expenses |

James E. Krause, Jacksonville, Florida, for plaintiff.

Elizabeth Anne Speck, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  With her on the briefs were Stuart F. Delery, Assistant Attorney General, Civil Division, Robert E. Kirshman, Jr., Director, and Kenneth M. Dintzer, Acting Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.  Of counsel was Carolyn J. Fox, Assistant District Counsel, United States Army Corps of Engineers, Jacksonville, Florida.

### OPINION AND ORDER

LETTOW, Judge.

A judgment on the administrative record was issued in plaintiff's favor in this post-award bid protest contesting a construction contract awarded by the Department of the Army, United States Army Corps of Engineers, Jacksonville District ("the Corps" or "the government") for work in Okeechobee County, Florida.  Now before the court is an application by plaintiff, BCPeabody Construction Services, Inc. ("BCPeabody"), for an award of attorneys' fees and

expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, and a Bill of Costs submitted pursuant to Rule 54(d) of the Rules of the Court of Federal Claims ("RCFC").

## BACKGROUND

The Corps issued a solicitation seeking proposals to construct a cutoff wall, repave a dike crown, and perform ancillary work in Okeechobee County, Florida. *BCPeabody Constr. Servs., Inc. v. United States*, 112 Fed. Cl. 502, 505 (2013). The solicitation was issued pursuant to 48 C.F.R. ("FAR") § 15.101-2, invoking a lowest-price technically acceptable source selection process. *Id.* The solicitation also stated that the "government intend[ed] to evaluate proposals and award a contract without discussions with offerors (except clarifications as described in FAR § 15.306(a))." *Id.* To be considered technically acceptable, offerors were required to submit project information sheets "to demonstrate that the offeror and its subcontractors had experience performing the type of work requested in the solicitation," *i.e.*, cutoff wall experience and earthen embankment experience. *Id.* Regarding the cutoff wall experience, one project information sheet had to specifically demonstrate prior experience "penetrating, excavating, and backfilling through an obstruction that could not be removed by a typical backhoe or excavator during cutoff wall construction." *Id.* In its proposal, BCPeabody identified Bauer Foundation Corporation ("Bauer") as its major subcontractor for the cutoff wall work and submitted two project information sheets to demonstrate Bauer's cutoff wall experience. *Id.* BCPeabody, however, mistakenly submitted two copies of the same project information sheet, and the submitted project information sheet failed to make the specific showing related to prior experience "penetrating, excavating, and backfilling through an obstruction that could not be removed by a typical backhoe or excavator during cutoff wall construction." *Id.* Accordingly, BCPeabody's proposal was found to be technically unacceptable, and it was excluded from the competition. *Id.* at 505-06. BCPeabody's proposal was the lowest-priced proposal and it was technically acceptable in all other respects. *Id.* at 506. Notably, the awardee, Edens Construction Co., Inc. ("Edens"), also proposed to use Bauer as a major subcontractor and submitted the requisite details regarding Bauer's past experience with cutoff wall construction. *Id.* As a result, the contracting officer was well aware that Bauer possessed the necessary prior experience to successfully perform the work. *Id.* But for the duplication of one project information sheet and the omission of a second project information sheet, BCPeabody would have received the contract. *Id.*

After learning that another offeror received the contract, BCPeabody requested a debriefing from the contracting officer. *BCPeabody,* 112 Fed. Cl. at 506. BCPeabody first learned of its copying error at this debriefing. *Id.* It submitted an agency-level protest which was denied and then filed a protest with the Government Accountability Office ("GAO"). *Id.* at 507. The GAO agreed with BCPeabody that the contracting officer had abused her discretion in failing to clarify the clerical mistake, given her knowledge that Bauer was well-qualified to perform the subcontracted work. *Id.* The GAO nonetheless denied relief, finding that BCPeabody's protest was deficient because BCPeabody had proffered to GAO a project information sheet from Bauer Foundations Canada, a separate legal entity from Bauer, but it only had a letter of commitment from Bauer to perform the work. *Id.*

BCPeabody thereafter filed suit in this court on June 6, 2013, seeking a preliminary injunction to bar the Corps from proceeding with the contract awarded to Edens. *BCPeabody,* 112 Fed. Cl. at 507. The court granted the preliminary injunction, *id.,* and ultimately granted BCPeabody's Motion for Judgment on the Administrative Record, setting aside the Corps' contract award, *id.* at 514. The Corps was directed to restore BCPeabody to the competition and reevaluate the proposals that were submitted. *Id.*

The court's decision rested upon a finding that the copying mistake was a "minor or clerical error" within the terms of FAR § 15.306(a), which meant that the contracting officer could have allowed BCPeabody to clarify its proposal without having to engage in discussions. *BCPeabody*, 112 Fed. Cl. at 512-13. In making this determination, the court noted that the missing project information sheet did not "bear on price or involve information that the contracting officer did not already know. Inclusion of a second project information sheet would not have materially altered the terms of BCPeabody's offer. . . . [T]he contracting officer was well aware that Bauer was a qualified subcontractor." *Id.* at 511. The court further held that, while the contracting officer had discretion under FAR § 15.306(a) to clarify the mistake, it was unreasonable and an abuse of discretion for her to fail to do so in the circumstances. *Id.* at 512 ("Once the contracting officer became aware of the suitability of Bauer's past experience with cutoff wall construction, she could not reasonably rate Bauer differently for BCPeabody as contrasted to Edens[, the awardee].").

BCPeabody now seeks an award of attorneys' fees and expenses in the amount of $47,716.06, pursuant to the EAJA, *see* Pl.'s Mot. & Application for Award of Att'ys' Fees and Related Nontaxable Expenses ("Pl.'s Mot. for Fees") at 4, ECF No. 71. It has also submitted a Bill of Costs totaling $19,176.85, pursuant to RCFC 54(d). Pl.'s Bill of Costs and Mem. in Support ("Pl.'s Bill of Costs") at 1, ECF No. 72.

## ANALYSIS

### I. Attorneys' Fees and Other Expenses

Congress enacted EAJA "'to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government.'" *Scarborough v. Principi*, 541 U.S. 401, 406 (2004) (quoting H.R. Rep. No. 96–1005, at 9 (1980)). EAJA provides a means by which a qualifying party might receive reasonable attorneys' fees and related expenses and costs for prevailing in litigation involving the United States. *Id.* at 406-07; *see also Commissioner, Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154, 155 n.1 (1990).

To obtain an award of attorneys' fees and related expenses under EAJA five criteria must be satisfied:

(1) The applicant must be a "prevailing party" in a suit against the United States;
(2) The government's position must not have been "substantially justified";
(3) No "special circumstances" may exist which would render an award unjust;

(4) An EAJA fee application must have been submitted to the court within thirty days of final judgment in the action and be supported by an itemized statement; and
(5) A qualifying party must, if a corporation or other organization, not have had more than $7,000,000 in net worth or 500 employees at the time the adversarial adjudication was initiated.

*See Jean*, 496 U.S. at 158 (citing and quoting 28 U.S.C. § 2412(d)(1), (2)); *KWV, Inc. v. United States*, 113 Fed. Cl. 534, 537 (2013); *Metropolitan Van & Storage, Inc. v. United States*, 101 Fed. Cl. 173, 185 (2011). BCPeabody bears the burden of establishing that it meets these requirements except as to the second criterion; the government has the burden to show that its position was substantially justified. *See White v. Nicholson*, 412 F.3d 1314, 1316 (Fed. Cir. 2005); *Hillensbeck v. United States*, 74 Fed. Cl. 477, 479–80 (2006); *Al Ghanim Combined Grp. Co. v. United States*, 67 Fed. Cl. 494, 498 (2005).

The government does not challenge BCPeabody's assertions that it was a prevailing party, that no special circumstances exist that would render an award unjust, that its EAJA application was timely filed, or that it complies with the net worth and size restrictions and is thus a qualifying party for an EAJA award. *See* Pl.'s Mot. for Fees 3-4; Def.'s Resp. to Pl.'s Application for Fees and Costs Pursuant to the Equal Access to Justice Act ("Def.'s Opp'n"), ECF No. 73.[1] The government does, however, contend that the government's position was substantially justified, or, alternatively, that if the court finds that its position was not substantially justified and decides to award fees and expenses, then BCPeabody should be limited to the statutorily provided hourly rate for its attorneys' fees as contrasted to the higher rates it seeks. Def.'s Opp'n at 5-11.

*A. Substantial Justification*

To demonstrate that its position was "substantially justified," the government must show that its position was "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988). Rather than examine the government's stance upon every individual issue addressed in the case, *Gargoyles, Inc. v. United States*, 45 Fed. Cl. 139, 148 (1999), the court must determine "whether the government's overall position [both prior to and during the litigation] had a reasonable basis in both law and fact," *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991); *see also Blakley v. United States*, 593 F.3d 1337, 1341 (Fed. Cir. 2010) ("In the context of EAJA claims, we have held that the 'position of the United States' in judicial proceedings refers to the United States' position 'throughout the dispute, including not only its litigating position but also the agency's administrative position.'" (quoting *Doty v. United States*, 71 F.3d 384, 386 (Fed. Cir. 1995))).

---

[1]An EAJA application must be submitted within thirty days of the final judgment. 28 U.S.C. § 2412(d)(1)(B). A final judgment is one that is "final and not appealable." 28 U.S.C. § 2412(d)(2)(G). The government had appealed this court's decision, but it did not pursue the appeal, eventually filing an unopposed motion to voluntarily dismiss the appeal with each side bearing its own costs, which the Federal Circuit granted on March 27, 2014. Order, *BCPeabody Constr. Servs., Inc. v. United States*, No. 14-5024 (Fed. Cir. Mar. 27, 2014). BCPeabody timely filed its EAJA application on April 23, 2014.

The government's position "can be justified even though it is incorrect." *Manno v. United States*, 48 Fed. Cl. 587, 589 (2001) (internal quotation marks and citation omitted). The inquiry is "not what the law now is, but what the [g]overnment was substantially justified in believing it to have been." *Loomis v. United States*, 74 Fed. Cl. 350, 355 (2006) (quoting *Pierce*, 487 U.S. at 561). Substantial justification lies somewhere between winning the case and being "merely undeserving of sanctions for frivolousness." *Pierce*, 487 U.S. at 566.

The government asserts that its position had a reasonable basis in fact and law because its position that a contracting officer is not required to seek clarifications regarding proposals was well-grounded in decisions from the Federal Circuit and this court. Def.'s Opp'n at 5-6. The government points to decisions that confirm the discretionary nature of FAR § 15.306(a)(2). *Id.* In the government's view, the contracting officer reasonably believed she had no obligation to clarify *any* clerical errors in a proposal she received. *Id.* (citing *Gulf Grp., Inc. v. United States*, 61 Fed. Cl. 338, 360 (2004)). This argument reaches too far. As the court explained in its decision on the merits, there is no doubt that FAR § 15.306(a)(2) is written in permissive terms, but a contracting officer's actions can still be arbitrary and thus not substantially justified. *See BCPeabody*, 112 Fed. Cl. at 512. The particular factual circumstances of this case left the contracting officer with no reasonable choice but to clarify the clerical error in BCPeabody's proposal. *Id.* BCPeabody's price was almost 25% lower than the next lowest bid, its price was not affected in any way by the clerical copying error, and it was disqualified solely for its obvious copying error respecting the past performance qualifications of a proposed subcontractor. *Id.* at 513. The facts are especially compelling because the awardee, Edens, proposed use of the very same subcontractor whose past performance was found to be unacceptable in relation to BCPeabody's proposal. The contracting officer had no substantive doubts regarding the ability of BCPeabody's major subcontractor to successfully perform the work. Importantly, FAR § 15.306(a) specifically refers to past performance as a subject respecting which clarifications may well be allowable. Given these circumstances, the contracting officer's failure to clarify the mistake was manifestly arbitrary.

The decisions upon which the government relies cannot serve to justify the government's actions during this procurement. The errors in the proposals in those cases actually prevented the contracting officer from being able properly to evaluate the substance of the proposals. *See, e.g.*, *Orion Tech., Inc., v. United States*, 704 F.3d 1344, 1351 (Fed. Cir. 2013) (upholding the contracting officer's decision to reject a proposal lacking required price information); *JWK Int'l Corp. v. United States*, 52 Fed. Cl. 650, 662 (2002) ("Given the circumstances of this case – with literally dozens of fundamental deficiencies having been identified in JWK's proposals – this court believes that the S[ource ]S[election ]B[oard] did not err in concluding that the limited exchanges envisioned by FAR [§] 15.306(a) would serve absolutely no utility here."). In sum, given the facts of this case, the government's position was not substantially justified. Accordingly, an award of attorneys' fees and expenses pursuant to EAJA is appropriate.

*B. Attorneys' Fees*

BCPeabody requests attorneys' fees amounting to $40,407.50, reflecting 120.4 hours of attorney time at the rate of $300.00 per hour for counsel of record, and 12.25 hours of attorney

time at the rate of $350.00 per hour for its general counsel.  Pl.'s Mot. for Fees at 7-8.[2]
BCPeabody submitted detailed invoices for these hours.  It asserts that its attorneys are entitled
to fees above and beyond the statutory cap of $125.00 for the following reasons:

> (1) BCP[eabody] obtained excellent results in the litigation; (2) BCP[eabody]'s
> selection of counsel in the action was confined to the limited pool of
> available attorneys admitted to the United States Court of Federal Claims[;]
> (3) BCP[eabody]'s attorney in this matter, James E. Krause, P.A., is dedicated
> to the practice of construction litigation, with particular emphasis on [f]ederal
> construction projects and government contracts . . . [;] (4) As reflected in the
> pleadings, the issues of fact and law before the [c]ourt were numerous and
> complex, demanding specialized skill, training and experience of [f]ederal
> construction law counsel.

Pl.'s Mot. for Fees at 9-10.  The government does not contest the number of hours for which
compensation is sought, but disagrees that there is any justification for an enhanced award.
Def.'s Opp'n at 7-9.

In pertinent part, EAJA provides that "attorney fees shall not be awarded in excess of
$125 per hour unless the court determines that an increase in the cost of living or a special factor,
such as the limited availability of qualified attorneys for the proceedings involved, justifies a
higher fee." 28 U.S.C. § 2412(d)(2)(A).  The burden is on the plaintiff to establish that special
factors warrant an enhanced award.  *Filtration Dev. Co. v. United States*, 63 Fed. Cl. 612, 623-24
(citing *Cox Constr. Co. v. United States*, 17 Cl. Ct. 29, 35 (1989)).  The Supreme Court
addressed enhanced fee awards in *Pierce*, stating that "'limited availability of qualified attorneys
for the proceedings involved' must refer to attorneys 'qualified for the proceedings' in some
specialized sense, rather than just in their general legal competence.  We think it refers to
attorneys having some distinctive knowledge or specialized skill . . . such as patent law, or
knowledge of foreign law or language." 487 U.S. at 572.  The Court further explained that
factors such as "novelty and difficulty of issues," the "undesirability of the case," the "work and
ability of counsel," and "the results obtained" are not special factors justifying an enhanced fee
award.  *Id.* at 573.

---

[2]The invoices submitted by BCPeabody to support the counsel of record's hours only
reflect a total of 118.4 hours worked, not 120.4.  Pl.'s Mot. for Fees Ex. A-2, at 5-15, ECF No.
71-1.  The discrepancy is explicable, however.  Counsel hired Kinberg & Associates, LLC to
conduct additional legal research, for which he was charged $200.00 per hour for three hours.
Pl.'s Mot. for Fees Ex. A-2, at 13 (reflecting a charge on July 23, 2013 for $600.00 for
"supporting case law research"), 22 (invoice from Kinberg & Associates for legal research for
$600.00).  BCPeabody appears to have lumped these hours from Kinberg & Associates with
counsel's hours in its EAJA application for a total of 120.4 claimed hours, all at a rate of $300.00
per hour.  Because it is not apparent from the supporting documentation if the research by
Kinberg was performed by an attorney, and BCPeabody's brief and exhibits are silent on the
issue, the court will treat the claimed three hours as paralegal hours, reimbursable at a rate of
$75.00 per hour in accord with the hourly rate charged by counsel's paralegal(s).  *See infra* at 7-
8.

None of BCPeabody's justifications for an enhanced fee award are persuasive. This court has previously held that "[e]ntitlement to an enhanced fee award is not a matter of attorney competence." *Dalles Irrigation Dist. v. United States*, 91 Fed. Cl. 689, 705 (2010); *see also Infiniti Info. Solutions, LLC v. United States*, 94 Fed. Cl. 740, 751 (2010) ("A government[] contract case does not require the kind of specialized knowledge or skill that would justify an enhanced award."); *California Marine Cleaning, Inc. v. United States*, 43 Fed. Cl. 724, 732 (1999) (holding that "expertise and experience in the field of government contracts and, specifically, bid protests" is an insufficient basis to award attorneys' fees in excess of the statutory cap). That BCPeabody's counsel has experience in federal construction contracts and is admitted to practice in this court is not a special factor. Moreover, the "excellence of the results obtained" was expressly disavowed as a special factor by the Supreme Court. This case was a quotidian bid protest challenging a contracting officer's exercise of discretion. There were no extraordinary factual or legal issues. Accordingly, no attorney hours shall be compensated in excess of the presently extant statutory cap of $125.00.[3]

Notably, BCPeabody did not request a statutorily permissible cost of living adjustment ("COLA") to the statutory cap. *See* 28 U.S.C. 2412(d)(2)(A). The burden rests on the plaintiff to "allege[] that the cost of living has increased [since the latest adjustment of the statutory cap which took effect in March 1996], as measured by the Department of Labor's Consumer Price Index ('CPI')," *California Marine Cleaning*, 43 Fed. Cl. at 733, and to supply the court with relevant CPI data, *Infiniti Info. Solutions*, 94 Fed. Cl. at 751 (citing *ACE Constructors, Inc. v. United States*, 81 Fed. Cl. 161, 168 (2008) and *Lion Raisins, Inc. v. United States*, 57 Fed. Cl. 505, 519 (2003)). BCPeabody has neither made the required allegation nor supplied the court with the necessary CPI data. *See* Def.'s Opp'n at 9. Consequently, the court cannot grant a COLA adjustment to the statutory rate.

In sum, BCPeabody is awarded compensation for 130.65 attorney hours at the statutory rate of $125.00, for a total of $16,331.25.

### C. Paralegal Fees

BCPeabody also seeks $6,097.50 in paralegal fees. Pl.'s Mot. for Fees Ex. A, at 1. It mistakenly classifies these fees as an expense, citing the Federal Circuit's decision in *Richlin Sec. Serv. Co. v. Chertoff*, 472 F.3d 1370 (Fed. Cir. 2006), *reh'g denied*, 482 F.3d 1358 (Fed. Cir. 2007), *rev'd*, 553 U.S. 571 (2008). *See* Pl.'s Mot. for Fees at 8-9. By considering paralegal fees as an expense, the Federal Circuit had limited recovery of paralegal fees to the attorney's cost for the services, rather than allowing recovery for paralegal services at the market rate. *Richlin*, 472 F.3d at 1381. That rationale no longer applies. The Supreme Court reversed the Federal Circuit in *Richlin* and determined that paralegal fees under EAJA should be considered attorneys' fees and awarded at prevailing market rates, not to exceed the $125 statutory cap

---

[3]Additionally, BCPeabody failed to present reasons as to why its general counsel should be entitled to an hourly rate above $125.00. As justification it submitted only an affidavit signed by the general counsel stating that his rate of $350.00 an hour is "equal or less" than the hourly rates typically charged in the local Florida area for service by a board certified construction lawyer. Pl.'s Mot. for Fees Ex. D, ¶ 4.

applicable to attorneys' fees.  553 U.S. at 581.  The Supreme Court relied, in large part, on its prior determination in *Missouri v. Jenkins*, 491 U.S. 274 (1989), that paralegal fees were subsumed within the statutory phrase "attorneys' fees" found in 42 U.S.C. § 1988, a fee-shifting provision for certain civil rights actions.  *Id.* at 581-82.  In this case, BCPeabody's counsel billed paralegals at a reasonable rate of $75 per hour for 81.3 hours.  *See United Partition Systems, Inc. v. United Sates*, 95 Fed. Cl. 42, 59-60 (2010) (applying prevailing market rates for paralegals in the pertinent local area).[4]  Additionally, as explained *supra* at 6 n.2, the court will treat the hours billed by Kinberg & Associates as paralegal hours, reimbursable at a rate of $75.00 per hour for three hours.  Thus, BCPeabody is awarded compensation for 84.3 paralegal hours at a rate of $75.00 per hour, for a total of $6,322.50.

### D. Other Expenses

As part of its EAJA application, BCPeabody requests $301.00 for administrative filing support services provided by the Lex Group VA and $910.06 for attorney travel expenses.  Pl.'s Mot. for Fees Ex. A, at 1.  The government did not address these expenses in its response to BCPeabody's application.

BCPeabody also submitted a Bill of Costs, pursuant to RCFC 54(d), seeking $19,176.85 in costs, consisting of: (1) a $400.00 filing fee, (2) $9,550.85 for internal personnel costs related to the lawsuit, (3) $3,150.00 for consultant costs, (4) $6,000.00 for a preliminary injunction bond, (5) $50.50 for Federal Express costs, and (6) $25.25 for office/copying expenses.  Pl.'s Bill of Costs Exs. A, A-1, A-2, ECF No. 72-1.  The government contends that all but one of these claimed expenses are statutorily excluded from an award of costs pursuant to RCFC 54(d).  Def.'s Resp. to Pl.'s Bill of Costs at 4, ECF No. 74.  The government submits that the only permissible cost is the $400.00 filing fee.  *Id.*  The government's contention is mistaken on legal grounds, however.  In acting on an application for fees and expenses under EAJA, the court is not limited to the costs permissible under RCFC 54(d).  That Rule is displaced by the explicit provisions of EAJA.  Section 2412(a) of title 28 provides that, "*Except as otherwise specifically provided by statute*, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States."  28 U.S.C. § 2412(a)(1) (emphasis added).[5]

---

[4]BCPeabody's brief states that the paralegal hours can be ascertained from counsel's invoices to BCPeabody by looking at those hours billed at $75.00 per hour as contrasted to counsel's hours, which were billed at $300.00 per hour.  Pl.'s Mot. for Fees at 8.  BCPeabody states that the paralegal worked 87.3 hours and that this expense is itemized in Ex. A on Form 5.  Pl.'s Mot. for Fees at 8.  Form 5 reflects a request for $6,097.50 in paralegal fees.  A mistake is evident, however, because 87.3 hours times $75.00 per hour equals $6,547.50.  The court assumes that there is a typographical error in BCPeabody's brief because the invoices reflect a total of 81.3 paralegal hours, and 81.3 hours at $75.00 per hour generates the claimed amount of $6,097.50.

[5]Section 1920 enumerates an exclusive list of expenses that may be categorized as "costs" and awarded by the court pursuant to RCFC 54(d).  *See Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987).  That list includes: "(1) Fees of the clerk and marshal;

Subsection 2412(d) then provides in pertinent part that "a court shall award to a prevailing party other than the United States fees *and other expenses*, in addition to any costs awarded pursuant to [28 U.S.C. § 2412(a)], incurred by that party in any civil action . . . brought by or against the United States." 28 U.S.C. § 2412(d)(1)(A) (emphasis added).

The exception to 28 U.S.C. 2412(a) applies here because EAJA is being invoked and Subparagraph 2412(d)(1)(A) is not limited by a statutory enumeration of permissible costs. Moreover, the statutory definition for "fees and expenses" as used in Subparagraph 2412(d)(1)(A) states that "'fees and other expenses' *includes* the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case." 28 U.S.C. § 2412(d)(2)(A) (emphasis added). Most courts have treated this definition as a guiding principle, rather than as a definitive listing of permissible expenses. *See, e.g.*, *Jean v. Nelson*, 863 F.2d 759, 777 (11th Cir. 1988) ("'fees' and 'expenses' are defined in the Act by example, rather than by limitation"), *aff'd on other grounds*, 396 U.S. 154 (1990); *Oliveira v. United States*, 827 F.2d 735, 744 (Fed. Cir. 1987); *Int'l Woodworkers of Am. v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1985) (affirming a district court's decision that the expenses enumerated in Section 2412(d)(2)(A) are set forth as examples, not as an exclusive list). *But see Weakley v. Bowen*, 803 F.2d 575, 580 (10th Cir. 1986) (holding that travel expenses and postage fees are not compensable expenses under EAJA); *NAACP v. Donovan*, 554 F. Supp. 715, 719-20 (D.D.C. 1982) (holding that while EAJA does not provide an exclusive definition of expenses, only those expenses *ejusdem generis*, of the same kind, should be considered to be an allowable expense). Fees for filing, electronic legal research, transcripts, photocopying, postage, travel, and couriers are routinely held to be recoverable under EAJA. *See, e.g.*, *Jean*, 863 F.2d at 759 (allowing recovery for telephone, reasonable travel, postage, and computerized research expenses); *Int'l Woodworkers of Am.*, 792 F.3d at 767 (same).

Accordingly, "fees and other expenses" as used in EAJA are limited only by the requirement that all claimed expenses must be reasonable and necessary to the litigation. On this basis, the court will permit recovery for counsel's travel expenses to Washington, D.C. for the preliminary injunction hearing ($910.06), the administrative filing services provided by the Lex Group VA ($301.00), the copying expenses ($25.25), and the Federal Express expenses ($50.50). The court also finds that reasonable and necessary consultant costs are recoverable under EAJA. *See Information Scis. Corp. v. United States*, 78 Fed. Cl. 673, 683 (2007) (permitting recovery of fees paid to an expert consultant to review a very large record). BCPeabody used a consultant for three purposes: (1) for initially evaluating the contracting officer's actions following the GAO decision, (2) for assessing the potential costs to be covered by the preliminary injunction bond, and (3) for providing advice to and discussions with counsel. *See* Pl.'s Bill of Costs at 5, Ex. A-7. The court concludes that the first two activities were necessary to the litigation, but the

---

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." 28 U.S.C. § 1920.

third category was not.  Accordingly, the court will permit recovery for the consultant's hours charged on May 11 (4 hours), June 5 (0.5 hours), June 17 (1.25 hours), June 18 (2.25 hours), June 24 (0.75 hours), and June 25 (1.75 hours), 2013, reimbursable at the billed rate of $100.00 per hour for 10.5 hours, for a total of $1,050.00.  *See* Pl.'s Bill of Costs Ex. A-7.

BCPeabody also seeks $9,550.85 in internal personnel costs for hours devoted to the bid protest.  Pl.'s Bill of Costs Ex. A-2.  In this respect, the Supreme Court has cautioned that "'[t]he Act should not be read . . . to permit reimbursement for items *ordinarily* included in office overhead, nor for any other expenses not reasonable in amount, necessary for the conduct of the litigation, and customarily chargeable to clients.'"  *Richlin Sec. Serv.*, 553 U.S. at 585 (alterations in original) (quoting S. Rep. No. 98-586 at 15 (1984)).  Regular employee salaries are not recoverable under EAJA, and BCPeabody's employees were engaged in general business functions, not legal functions.  *See Information Scis. Corp.*, 78 Fed. Cl. at 684 (denying plaintiff's request for employee overtime expenses under EAJA); *cf. Taylor Grp., Inc. v. Johnson*, 919 F. Supp. 1545, 1556 (M.D. Ala. 1996) (declining to award attorney's secretarial overtime expenses because they were properly considered business overhead).

Finally, BCPeabody seeks to recover the premium it paid to secure a bond to support the preliminary injunction.  To effectuate the preliminary injunction it had sought successfully, BCPeabody had to purchase a $300,000.00 bond from a third party for which it paid a bond premium of $6,000.00.  Pl.'s Bill of Costs Ex. C.  Historically, bond premiums were recoverable costs in suits at equity.  *See, e.g.*, *Scaduto v. Orlando*, 381 F.2d 587, 596 (2d Cir. 1967); *In re Northern Ind. Oil Co.*, 192 F.2d 139, 143 (7th Cir. 1951) (holding that the premium upon a bond was a taxable cost), *abrogation recognized by Republic Tobacco Co. v. N. Atlantic Trading Co.*, 481 F.3d 442, 447-48 (7th Cir. 2007); *Williams v. Sawyer Bros.*, 51 F.2d 1004, 1005 (2d Cir. 1931) (same); *Weiss v. Smith*, 103 F. Supp. 736, 736 (D. Conn. 1952) (holding that an injunction bond premium is a taxable cost under a local rule of civil procedure).  *But see Kroger Grocery & Baking Co. v. Martin*, 97 F.2d 348, 349 (6th Cir. 1938) (declining to award an appeal bond premium as a taxable cost because it was not customary in the circuit) (citing *Newton v. Consolidated Gas Co.*, 265 U.S. 78, 84 (1924)).

The practice of awarding bond premiums as a taxable cost, absent explicit statutory authority, was curtailed by the Supreme Court's decision in *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437 (1987).  In *Crawford*, the Supreme Court held that "[Section] 1920 defines the term 'costs' as used in Rule 54(d).  Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d)."  *Id.* at 441-42.  It concluded that Rule 54(d) was no longer to be interpreted as allowing courts discretion as to what costs are taxable.  *Id.* at 442.[6]  The Supreme Court's decision in *Crawford*, however, has no

---

[6]Previously, "it was generally recognized that . . . Rule 54(d) was intended as a grant of discretion to district courts," which was derived from the "practice formerly followed in equity . . . where courts possessed the power to award costs not expressly provided by statutes, as part of the original authority of the chancellor to do equity in a particular situation."  *Crawford*, 482 U.S. at 446-47 (Marshall, J. dissenting) (internal quotation marks and citations omitted); *accord In re Northern Ind. Oil*, 192 F.2d at 143 ("[C]ourts have authority to include premiums paid for bonds as proper items of taxable costs.  We believe they have such authority derived from the

bearing on the permissible fees and expenses that can be awarded pursuant to EAJA. *See Sterling Fed. Sys., Inc. v. Goldin*, 16 F.3d 1177, 1184-85 (Fed. Cir. 1994). Indeed, the historical precedent of awarding bond premiums as reasonable costs and the simple reality that BCPeabody had no choice but to pay for a bond to secure its rights under the preliminary injunction weigh heavily in favor of awarding the bond premium as an expense pursuant to 28 U.S.C. § 2412(d)(1)(A).

In conclusion, BCPeabody is entitled to "other expenses" amounting to $8,336.81, consisting of reasonable expenses for attorney travel, copying, Federal Express delivery, administrative processing, and expert consulting, as well as the bond premium necessarily paid to obtain the preliminary injunction bond.

## II. Bill of Costs

As a general matter, costs awarded pursuant to RCFC 54(d) are statutorily enumerated and are to be strictly construed. *See Taniguchi v. Kan Pacific Saipan, Ltd.*, __U.S. __, __, 132 S. Ct. 1997, 2003-04 (2012) (holding that Subsection 1920(6), allowing for compensation of interpreters, does not also include document translation costs because the ordinary meaning of interpreter does not encompass written translation). The prevailing party must provide documentation of the costs it requests to be awarded. *Dalles Irrigation Dist.*, 91 Fed. Cl. at 710. This documentation must show that the costs sought were "reasonable and necessary to the litigation." *Standard Commc'ns, Inc. v. United States*, 106 Fed. Cl. 165, 175 (2012) (citing *In re Ricoh Co.*, 661 F.3d 1361, 1368 (Fed. Cir. 2011) (applying a regional circuit's interpretation of Section 1920)). There is no dispute that the $400.00 filing fee is a cost awardable under RCFC 54(d). Correlatively, it would be an "expenses" allowable pursuant to 28 U.S.C. § 2412(d)(1)(A).

## CONCLUSION

For the reasons stated, BCPeabody's application for attorneys' fees and expenses under EAJA is GRANTED IN PART. BCPeabody is awarded attorneys' fees of $16,331.25, paralegal fees of $6,322.50, and expenses of $8,336.81. BCPeabody's Bill of Costs is GRANTED IN PART. BCPeabody is awarded the filing fee of $400.00. In total, BCPeabody is awarded $31,390.56.

---

equitable power to assess costs according to the demands of justice, as disclosed by the facts and the circumstances of the particular case being considered."). In recognizing the Supreme Court's shift in *Crawford*, the Seventh Circuit has since reversed its stance that district courts have an equitable power to award costs beyond those specifically enumerated in Section 1920. *See Republic Tobacco Co.*, 481 F.3d at 447 ("To the extent these [prior] cases suggest that Rule 54(d) empowers a district court to tax costs not outlined in [Section] 1920, they are not controlling in light of *Crawford*.") (referring *inter alia* to *In re Northern Ind. Oil*, 192 F.2d 139); *see also Pershern v. Fiatallis N. Am., Inc.*, 834 F.2d 136, 140 (8th Cir. 1987) ("Section 1920 does not authorize the taxing of . . . removal bond premiums in removal actions.").

The Clerk is directed to enter judgment in accord with this disposition.

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge